IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGEL GONZALEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-cv-170-DGW |
| ) | |
| DR. FEINERMAN, RICK HARRINGTON,) | |
| and WEXFORD HEALTH SOURCES, INC., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**WILKERSON, Magistrate Judge:**

Now Pending before the Court are the Motion for Protective Order filed by Wexford Health Sources, Inc. on November 14, 2014 (Doc. 134), the Motion to Compel Discovery filed by Plaintiff, Angel Gonzalez, on November 24, 2014 (Doc. 136), the Motion to Dismiss filed by Defendant, Rick Harrington, on December 1, 2014 (Doc. 137), the Motion for Extension of Time to File Summary Judgment Motions filed by Rick Harrington on December 1, 2014 (Doc. 138), and the Motion for Extension of Time to File Response filed by Plaintiff on January 5, 2015 (Doc. 143). The Motion for Protective Order is **GRANTED IN PART** (Doc. 134), the Motion to Compel Discovery is **TAKEN UNDER ADVISEMENT** (Doc. 136), the Motion to Dismiss is **GRANTED IN PART** (Doc. 137), the Motion for Extension of Time to File Summary Judgment Motions is **GRANTED** (Doc. 138), and the Motion for Extension of Time to File Response is **GRANTED** (Doc. 143).

**Motion for Protective Order**

Wexford Health Sources, Inc., which is not a party to this lawsuit,[1] seeks a protective order related to a discovery request by Plaintiff for various policies and procedures related to the healthcare that Wexford provides to inmates within the Illinois Department of Corrections (IDOC). Wexford indicates that these items contain proprietary information and that they should remain confidential in order to comply with security and safety requirements of the IDOC. The parties agree to the proposed protective order.

The proposed protective order would cover any document produced by Wexford that the parties believe would require protection. It would prevent the Plaintiff, himself, from copying or disseminating such documents and would prevent any person from disclosing the documents to persons outside of this litigation. The proposed other further provides that documents may only be used in this litigation and that they must be promptly returned to Wexford or destroyed at the conclusion of this litigation. Finally, the proposed order notes that any party may seek modification and that:

> In the event that any party, person, or entity otherwise bound by this Protective Order intends to file any Protected Documents in the public record, such material shall be filed in accordance with the Court's procedures, if any, for filing material under seal. The Court hereby grants the parties leave to so file any Protected Documents.

Federal Rule of Civil Procedure 26(c)(1)(G) allows for protective orders to prevent the disclosure of "trade secret[s] or other confidential research, development, or commercial information." Defendant appears to be seeking relief pursuant to this Rule. While the Court generally approves the proposed protective order, *see e.g. Methodist Hospitals, Inc. v. Sullivan*, 91

---

[1] Attorney Timothy Dugan represents Defendant Feinerman, and employee of Wexford, and also represents Wexford in other litigation pending in this District. As such, Wexford should receive notice of this Order through CM/ECF.

F.3d 1026, 1031-1032 (7th Cir. 1996), certain modifications are necessary. First, the protective order is open-ended in that it would prevent the disclosure of any and all documents that the *parties* believe should be protected. Such a procedure does not inform the *Court* as to what documents, or even categories of documents, would be covered by the proposed protective order. However, the subpoena attached to Wexford's motion, which contains a list of requested documents, does provide clarity. Therefore, the protective order shall be limited to the types and categories of documents that have been requested by Plaintiff in his subpoena dated October 29, 2014, to wit:

    a.    general policies and procedures regarding the delivery, management, costs, levels, and standards of or related to healthcare services provided to inmates incarcerated with the Illinois Department of Corrections;

    b.    policies, guidelines, and procedures related to the delivery of specific care for specific conditions, like inguinal hernias;

    c.    plans as to the medical care of Plaintiff;

    d.    policies and procedures related to the handling of/participation in/response to prisoner grievances or the grievance process.

    e.    costs related to the delivery of healthcare in general and/or as to particular inmates or particular conditions.

    f.    medical care provided to particular inmates;

The protective order shall be entered by separate docket entry. If the parties believe that additional or different categories should be utilized, they may file a motion for modification of the protective order.

**Motion to Compel Discovery**

Plaintiff's Amended Complaint, filed on August 12, 2013, alleges two counts: (1) deliberate indifference to a serious medical need related to Plaintiff's inguinal hernia from which he suffered for 9 years (since 2004); and, (2) denial of equal protection of the laws related to the treatment of the inguinal hernia (class-of-one). In order to pursue his equal protection claim, Plaintiff served the following interrogatory (and related request to produce) on Defendant Kim Butler:[2] "Identify any other inmate at Menard Correctional Facility that suffered from and /or were treated for an inguinal hernia from 2000 to the present" (Doc. 136-1, p. 6, Doc. 136-2, p. 3). In response, Warden Butler objected that the interrogatory was overly broad and burdensome (*Id.*). A similar interrogatory and answer was served with respect to Defendant Feinerman (Doc. 136-3, p. 8, Doc. 136-4, p. 6). Plaintiff also served a subpoena on Wexford seeking similar records and the records of another inmate, Ray Ferguson, in particular. (Doc. 136-5, p. 4). Plaintiff is not seeking to compel Dr. Feinerman to respond as he has already provided relevant deposition testimony and is not in possession of documents.

Defendant Butler first argues that the documents requested are irrelevant to the claim against her. Defendant Butler indicates that the claims against her are not in her individual

---

[2] Plaintiff's Amended Complaint (Doc. 109) names Rick Harrington and Dr. Feinerman as Defendants and asserts two claims against both Defendants. Notwithstanding the allegations, the parties appear to be in agreement that Rick Harrington is being sued only in his official capacity as the Warden of Menard in order to perfect any injunctive relief that Plaintiff may be awarded. Since the filing of the Amended Complaint, Kim Butler has been appointed the Warden of Menard and Mr. Harrington has retired. No party has moved for Rick Harrington to be substituted by Kim Butler – however, the parties filing make such an assumption. In its mandate, the Seventh Circuit Court of Appeals held that the Warden of Menard is a proper party because he would be responsible for carrying out any injunctive relief; and that Plaintiff is not alleging any personal participation of the Warden in the deprivation of his constitutional rights. As will be discussed with respect to the Motion to Dismiss, Plaintiff has been transferred to the Western Illinois Correction Center – the current Warden of that facility is Jeff Korte.

capacity based on her personal involvement, but rather only to enforce any injunctive relief that Plaintiff may be awarded. More importantly, Defendant Butler argues that producing the information would be unduly burdensome. Defendant represents that there are currently thousands of inmates housed at Menard, that from 2000 to the present, as many as 10,000 inmates (or more) have been housed at Menard, and that medical records are in paper format and filed according to inmate and not medical condition. Accordingly, it would take an in ordinate amount of time to physically go through each medical record to find the records that would be responsive to Plaintiff's discovery request. Wexford states that it would have to turn over at least 500 medical records (that would need to be copied and redacted) and would have to cross-check those records against the housing records of Menard. Wexford further indicates that the records would mean nothing to Plaintiff without an expert to compare the records. Thus, Wexford argues that the records would most likely be inadmissible.

Wexford does not make clear, however, how it maintains records related to inmate healthcare. It seems to the Court that Plaintiff is attempting to identify inmates who suffered from a similar condition who were treated for surgery around the same time period of Plaintiff's condition. The Court assumes that Wexford would necessarily go through some sort of approval process prior to slating an inmate for any kind of surgery including one for inguinal hernia. The Court further would assume that such a process would necessarily generate records that may be in a searchable format (i.e. electronic) or at least would be considerably smaller in size than all of the records of every single inmate to whom Wexford provides services. The IDOC may also have similar records, related to when an inmate is transported or moved for purposes of surgery. The briefs in this matter, however, do not provide clarity as to the existence of such records and whether they can be readily searched.

Therefore, this matter is set for an **IN PERSON** hearing on the Motion to Compel to occur on **Monday, February 9, 2015 at 2:30 p.m.** before the undersigned at the Federal Courthouse in East St. Louis, Illinois. Wexford should have present a person who is familiar with its medical record keeping. Defendant Butler and Plaintiff need only appear by counsel.

**Motions for Extension of Time**

These Motions are **GRANTED**. Defendant Butler's deadline for filing a Motion for Summary Judgment and Plaintiff's response to Defendant Feinerman's Motion for Summary Judgment shall be reset at the motion hearing.

**Motion to Dismiss**

Defendant Butler seeks dismissal in light of Plaintiff's transfer to the Western Illinois Correctional Center. The Motion does not seek dismissal on the merits. The Motion is **GRANTED IN PART** only to the extent that Defendant seeks to substitute Kim Butler with the Warden of Western Illinois. The Clerk of Court is **DIRECTED** to replace Kim Butler with Jeff Korte, the current Warden of Western Illinois.

## CONCLUSION

For the foregoing reasons, the Motion for Protective Order is **GRANTED IN PART** (Doc. 134).  A protect order shall be entered by separate docket entry.

The Motion to Compel Discovery is **TAKEN UNDER ADVISEMENT** (Doc. 136).  A Motion hearing is **SET** for **February 9, 2015 at 2:30 p.m.**

The Motion to Dismiss is **GRANTED IN PART** (Doc. 137).  The Clerk of Court is **DIRECTED** to substitute Kim Butler with Jeff Korte.

The Motion for Extension of Time to File Summary Judgment Motions (Doc. 138) and the Motion for Extension of Time to File Response are **GRANTED** (Doc. 143).   New deadlines will be set at the February 9, 2015 hearing.

**IT IS SO ORDERED.**

**DATED: January 20, 2015**

*Donald Wilkerson*

**DONALD G. WILKERSON**
**United States Magistrate Judge**